I thought what we might do is give you 7 and 7 and then allow each of you a minute for rebuttal after the government follows the both of you. Is that satisfactory? Actually, Your Honor, if I may, Rene Valladares, I will be actually making the argument for both cases. Okay. And you'll do any rebuttal? Yes, Your Honor. Okay. All right. Fine. Please proceed. Yes, Your Honor. May it please the Court, as I stated, Rene Valladares and I will be representing both Mr. Gant and Mr. Issa, and pressing our counsel table is Ms. Brenda Horn. Ms. Horn drafted the briefs for Mr. Issa, and I would ask that the Court give me 3 minutes for rebuttal. Sure. In this case, we have a situation where both Mr. Gant and Mr. Issa received sentences that far exceeded the range which was the Chapter 7 range of the sentencing guidelines. Specifically, in the case of Mr. Gant, he received a sentence of 18 months that was twice the high end of the 3- to 9-month sentence that he could receive under Chapter 7. As far as Mr. Issa, he received a sentence of 24 months that was a sentence of approximately two-and-a-half times higher than the high end of what he could receive, being 4- to 10-months. Neither of these guys are Boy Scouts. Absolutely not. And they were certainly ---- And they did. And they did. And I'll be a fool to argue otherwise. Nonetheless, the release that I'm asking in this case is fairly modest. I'm asking for the Court essentially to vacate the sentence and to remand for the purposes of resentencing and proceed in accordance with United States v. McBell.     of resentencing and proceed in accordance with United States v. McBell. What do you think the holding of McBell is? Well, they're actually ---- I think the narrow holding deals with the issue of specificity under 3553c2 in the case of ---- The rest is dicta, is it not? It's tough to say, Judge. Well, it is. I mean, I think you said it quite accurately, what the holding was. We're not bound by dicta. Certainly the Court is not. So I think you've got to make your case at least as to feel bound by the holding. Maybe we'll follow the dicta, maybe not. And of course, the Court is correct in that regard. Nonetheless, obviously, one of my two arguments is that, in effect, the Court in both cases, the judge in both cases, failed to specify the reasons why an upper departure was necessary under 3553c2, and also the judge utilized impermissible factors under 3583e in the case. If I may start with the second, that being the impermissible factors, it's pretty clear that under in both cases, and in both cases it was the same judge, the judge was under the impression that he could utilize all the factors as recited in 3553, as opposed to the factors in 3553 minus those that are excluded in 3583e. Was McBell on the books when these people were sentenced? No, Your Honor. No. No. McBell was. It's subsequent authority. It is. It is. And it was just by, in one case, I think a couple of months, in the other one, perhaps one month, but it's post. McBell is post. And my understanding, correct, that in neither of these two defendants, was there a contemporaneous objection? Not a contemporaneous objection. We would, however, argue that, at a minimum, regarding the issue of impermissible factors, in the case of ESA, there is preserved error as the defendant, through counsel, did state in his sentencing memorandum, and that's at Excerpt of the Record, page 38, where they did go through the factors that are appropriate for sentence in a situation such as this one. And then the sentencing memorandum proceeds to go ahead and analyze the appropriate factors. Now, and again, I say that the judge was under this misimpression that he could utilize all the factors on 3553 because he said so. In the case of ESA, the judge said that he was looking at all the factors under 3553, and that those were necessary for him to look at. He was, I suppose, mandated to look at them. And he proceeded to recite a number of different factors, including just punishment, as well as, in this case, he also recited the Respect for law. Respect for the law. That's correct. And thank you, Your Honor. He did recite also some factors that are permissible. What do you think the difference is between just punishment and inducing respect for the law? Well, it's difficult indeed to do. What? Just punishment and respect for the law. Yeah. It's tough to say, and I believe McBell. Well, yes, I think it's subtle, as someone said, but it's so subtle, it's hard to grasp. It is indeed subtle, and I think McBell does say that many of these factors are indeed the difference is subtle to make. And I think that going back to the other factor, to the other issue, the issue of specificity, that's why it's so important specifically in a case like this to make that distinction, because a lot of these issues are very subtle indeed. But again, in ESA, the Court states specifically that he is looking at all the 3553 factors. In Gantt, the Court also states that he is looking at all the 3553 factors. The Court does not proceed to recite the factors, but he does say that he's looking at all 3553 factors. Now, in the case of Gantt, while in ESA, as far as prohibited factors, the Court recites specifically prohibited factors, in Gantt, the Court does not, which makes it very difficult to really figure out what factors the Court was using and whether the Court was using factors that were prohibited or not, other than the fact that we do have on the record the statement that he did look at all the factors in 3553, which obviously we know he's not supposed to go ahead and do. Now, as far as the issue of specificity, in neither of the two cases does the judge tie in the need for the departure, and again, these are pretty significant departures, one a two-time departure from the high end, another one a two-and-a-half-time departure from the high end. The judge does not tie in the need for a departure with the departure. The judge does not say why the specific, the sentence that was imposed was required, as McBell states, nor does the Court say why is the guideline sentence not appropriate, as also McBell, McBell requires. So basically, those are the two arguments in our case, and again, the two arguments, I think, militate in favor of vacating and sending back for the Court for the purposes of resentencing. Okay. You want to save some time for rebuttal? Absolutely. Thank you, Your Honor. Thank you for your argument. We'll hear from the government at this time. Mr. Duncan. May it please the Court, my name is Andrew Duncan. I'm an assistant U.S. attorney for the District of Nevada in Las Vegas, and I represent the appellee, the United States. Both ISSA and Gant are arguing that their case should be remanded for resentencing because the Court did not lay out the specific reasons for the sentencing. This Court should reject those claims for two separate reasons. First of all, the Court did not commit error because the Court did state, both explicit and implicitly, his reasons for the sentences in the two cases. How do we know that from Gant? In the Gant case, it's hard to discern what the district court did. Admittedly, the Gant case, it isn't as clear as in the ISSA case. However, in the Gant case, we can look to certain things to show that the Court did. On page 88 and 89 of the excerpt of record, the Court talks about the defendant's problems with drugs and alcohol and how the defendant, it would be good for the defendant to get help for these particular things. And this is occurring while he's sentencing the defendant. Clearly, the Court was aware of subsection D, which deals with the need for correctional treatment and the need for rehabilitation in prison. And the Court is specifically addressing those issues at this time, saying that he hopes that the defendant will take advantage of those programs and will use those programs in order to rehabilitate himself and in order to dry out. That was colloquy before the actual sentencing? That is, you know, within one minute of his actual sentencing, the Court is discussing that. It's certainly our position. But that's not a finding. It's certainly our position that that's a colloquy, right? That's a colloquy, but it's not a statement of reasons for his particular reason. Isn't the law clear that the statement of reasons can't or has to be after the colloquy, not part of it? You know, as noted by this Court in McBell in analyzing it, and as the Court noted, perhaps it's dicta in McBell, that the Court could consider the colloquy and could implicitly in his sentence. And it's the government's position that that's what occurred in the Gantt case. Is that the problem? The problem with that analysis, though, is that district judges say a lot of things at sentencing, and a lot of it is give and take. But at the end of the day, and it's not only sentencing cases, but other cases in which we're engaged in conversation, at the end of the day, it's the findings that matter. And that's at the close of the evidence and after the Court has considered and talked with counsel. So that's what we've got to review, it seems to me. And it's the government's position that that's what occurred in this particular case. The Court had heard all of the evidence. The Court had heard all of the arguments from counsel. And he's at the point of pronouncing his sentence. And in pronouncing his sentence to the defendant, at that point, he may not have said the actual words, I'm sentencing you to 18 months, which was his sentence in the Gantt case. But it's happening at the proximate time. It's going through a continuous flow as he's talking about the sentence. Close counts? Is that what you're saying? What we're saying is that it occurred, you know, during the time of his sentencing, simply because he hasn't announced the exact number. Well, let me tell you what my – I just like my difficulty. The problem is we – you know, we're not a sentencing court, obviously. Our function is to review what happened and to determine whether or not the district court relied on impermissible factors or permissible factors. And without findings, it's almost impossible to do that. We can't guess at whether it's permissible or impermissible. And so that's the basis of the specificity requirement. In Gantt, I have problems with the specificity. And ESA, it's a little bit different story. There's a – we have a better idea about what Judge Proh was thinking about in ESA. But in Gantt, I can't tell from the findings whether or not he relied on impermissible factors or not. Two factors. First on – it's the government's contention that the district court was very clear. He talked about deterrence specifically and how – in fact, he stated that his sentence was to deter you and deter others from engaging in similar misconduct, hopefully prevent you from engaging in such conduct in the future. He also talks about treatment. Hope you'll get some treatment while you're in custody. It's going to be, in essence, a captive audience for purposes of treatment. So in ESA, the reasons were very specific. In Gantt, the reasons are more implicit in the Court's discussion of 3553. He talks about 3553. He talks about how he's familiar with the section and the requirements of 3553. But that's about all he says. He also talks, though, about the defendant needing treatment for his drug problem and that he hopes he takes advantage of the treatment for the drug problem. One of the things the Court said that's very important in this particular case is that the record to review, it's the government's position that this should be reviewed under a plain error standard. So even if the Court finds that there is error in this case, the error didn't seriously affect the fairness, integrity, or public reputation of the process. Roberts, let's suppose that MacBell was on the books six months prior to the sentencing of these two individuals before the determination was made that they had violated their conditions and before a sentence for those violations were imposed. And at sentencing, defense counsel had reminded the Court of MacBell and the need for specific statements to be made to justify an extra guideline sentence. And the judge, in my hypothetical, did exactly what Judge Pro did here. Would we have to send that case back? I don't think there's a distinction to be made. Before or after, you're saying if after the sentence, opposing counsel had objected it and we're looking at a different standard? Imagine hypothetically all these facts, but we're going to put MacBell back in the past, opposite of back to the future, and it's on the books and it's extant. And these defense lawyers from the PD's office get up and before sentence is pronounced, they've read the PSR, they get up and say, I want to remind the Court of MacBell, here's the citation, and its requirement that you state specifically, if Your Honor's inclined to go over the guidelines, why you're doing so. And that Judge Pro did exactly in that hypothetical situation what he did here. Would we be required to send the case back? No. Initially, it's our position that he did state with enough specificity his reasons for sentencing in the Gantt case. It's our position that he adopted. It's hard to square that with MacBell, wouldn't you say? I mean, it's really hard to do. If we were to hold in a published opinion, for example, that this was adequate, I mean, I think it would be clearly conflicting under the scenario that Judge Hawkins described, whether it's not under plain error, it's we've had MacBell on the books, district court says what it says now, and there's a contemporaneous objection. It would be awfully hard to square this, that result with MacBell, wouldn't you say? This case can be distinguished from MacBell. In MacBell, the Court simply stated I've considered the guidelines, and the Court said the sentence within the guidelines would be insufficient to meet the purposes of sentencing under these circumstances. And while Judge Proulx did state something similar, Judge Proulx had a lengthier colloquy in which he talked about the treatment of the defendant coming to grips with his drug problem and getting a job upon his release. Judge Proulx also talked about his history. And he also had probation and the judge talking about the defendant's past. And this goes to this breach of trust concept that was talked about in MacBell, that while punishment may not be something that should be considered by the Court, this concept of breach of trust is something that can be considered. And Judge Proulx talked about that, talked about the defendant's leaving of the halfway house and his drug problem, and stated that it's impossible to believe much of what the defendant is telling him. But in MacBell, there is a similar colloquy. In MacBell, the sentencing and bail hearings, it says, there is discussion of behavior and two respects that might indicate MacBell's potential for danger in the community. So in MacBell, as I read MacBell, we had a discussion of the factors that might be involved in a sentencing, but the Court still said, well, that's inadequate. You have to give your reason of specificity. Here, it seems to me in Gantt, what you're saying is we have to infer what he did based on the colloquy. And that seems in conflict with MacBell. First of all, it's our position that MacBell indicates that you can infer based on the colloquy. But also, that situation you're talking about in MacBell did not occur at his sentencing. It occurred at a bail hearing later that the defendant was not present for. It said sentencing. That's what the footnote says. Maybe I'm misreading it, and I'll apologize if I have. But it's the government's position that the case is consistent with MacBell and that the Court did state with enough specificity his particular reasons in both Gantt and Issa. Roberts. Thank you for coming in today. Thank you for your argument. Rebuttal. The government orally, as well as in written form, states that implicit arguments are sufficient to go ahead and serve the purposes of 3553C2. That is contrary with what MacBell says. MacBell deals with it in footnote number 10, states that that's not enough. It refers to prior authority on that particular issue. It refers to Montenegro-Rojo, and it states that that is simply not enough. It may be enough for a case that doesn't involve the departure, but certainly it's not enough in this situation. Here, not only do we have a case that yes, sir. I'm going to ask you, what strikes me as the two hurdles you have to get over on your appeals, one, was the judge's action plain error, and two, why should we exercise our discretion to correct the plain error if there was one? Yes, sir. If I may respond.  I don't know if you're questioning me. Well, first, was it plain error? Secondly, why should we exercise discretion to correct it if there was one? Surely. First, as I said, as far as the ESA issue dealing with the impermissible reasons, impermissible grounds, my position is that that issue was preserved. Counsel did bring it to the Court's attention in its sentencing memorandum. It is at page 38 of the record. So that issue as far as ESA is reserved. Now, as to the other issues involving ESA as well as Gantt, we did concede in the briefs that there was plain error. Nonetheless, there is, first of all, plain error in the sense that even before McBell, obviously, 3553C2 was there, as well as 3853E. Basically, a court, even before McBell, had to go ahead and impose a sentence where it did not, in a supervised release case, where it did not utilize impermissible factors, and a court also had to go ahead and explain a departure. That's your answer there. But why should we exercise discretion, which is only to correct prejudice? You know, it requires some sense that the public will be outraged. I think most people reading this record will think they got what they deserved. But I think that the reason why this Court should exercise its discretion is because it is reasonably probable that the sentence would have been different after a proper analysis of the factors that are permitted. You know, that argument would make sense to me if there was anything in this record Let's just take ISA for a moment. If Judge Brewer had said, when talking about the impermissible factors, respect for law, need to punish, deter, and said, ordinarily, I would be right within the guidelines, but those two factors caused me to go over, if that were the record, then that argument would make some more sense. But that's not the record. Well, the problem, though, is that, again, we don't know And in Ganti, he just doesn't say at all. He doesn't. In terms of specific statements. That's correct. The problem is that, really, in ISA, we don't know how he calibrated the different factors that he recited, the impermissible factors, respect for the law, punishment, and how he calibrated those factors in relationship with the other two factors. We just simply have no idea. And it could be that, I mean, this judge may, upon simply looking at factors that are permissible, say the sentence is going to be different. I do emphasize, again, and I've said this before, that we believe that, obviously, one of the issues in ISA has been, obviously, preserved. If it were remanded for resentencing, could he sentence them to more than 18 and 24 months? In the case of Gant, he could. In the case of ISA, he could not, since he went for the statutory maximum. But in the case of Gant, he could go ahead and do that. Yes, sir. Your clients are aware of that? They are. They are very well aware of that. Yes, sir. You know, it's kind of difficult to analyze plain error, I think, in this context, because if the district court doesn't state reasons, it's hard for us to know whether or not it would have made a difference. So it's kind of a conundrum. I mean, the one way to look at plain error in this context is to say you have to have specificity sufficient to allow appellate review. And that's what affects the integrity of the judicial process, as opposed to affirmatively establishing that the sentence would have been different. Does that make any sense? It does, Your Honor. And I guess, I mean, really, at the very core, I think, of specificity is not at the very core, but one of the things that is at the very core is the ability to go ahead and perform appellate review. The problem here is that, really, with the type of record we have, there is no specificity such that this Court can really perform meaningful appellate review because of the record. It does. I mean, it seems sort of circular to me, because if, for example, the district court explicitly relies on impermissible factors, we can say, well, we can reverse on that. That's right. Because we did. And the error is apparent on the record. However, when the district court's not specific, I don't know, if you're required to show under plenary review that it would have been different, I don't know how you could ever show that, because we don't know what the district court did. Well, Your Honor, frankly, I spent the whole night yesterday figuring or thinking about that, because, I mean, it is kind of a catch-22 situation that I find myself in this type of scenario. Yeah. Okay. Thank you very much. I thank both of you for your arguments. The case to start will be submitted.
judges: Noonan, Hawkins, Thomas